OPINION
{¶ 1} Donald E. Baker has filed this action in mandamus seeking a writ which compels the Industrial Commission of Ohio ("commission") to vacate its orders denying him permanent total disability ("PTD") compensation and denying him the opportunity to depose vocational specialist Barbara Burk. After the deposition, Mr. Baker requests that the commission address once again the question of whether or not he is entitled to PTD compensation.
 {¶ 2} In accord with Loc.R. 12(M), the case was referred to a magistrate to conduct appropriate proceedings. The parties stipulated the pertinent evidence and filed briefs. The magistrate then issued a magistrate's decision which includes a recommendation that we deny the requested relief. (Attached as Appendix A.)
 {¶ 3} Counsel for Mr. Baker has filed objections to the magistrate's decision. Counsel for the commission has filed a memorandum in response. The case is now before the court for a full, independent review.
 {¶ 4} Donald Baker was working as a taxicab driver for Yellow Cab Company when he was injured in a motor vehicle collision. His workers' compensation claim has been allowed for "sprain thoracic region; sprain lumbosacral"; and "aggravation of pre-existing degenerative disc disease of the lumbar spine."
 {¶ 5} In August of 2000, Mr. Baker applied for PTD compensation. His application was supported by a report from his treating chiropractor, Peter J. Fagerland, D.C.
 {¶ 6} On November 6, 2000, Mr. Baker was examined by commission specialist Wayne C. Amendt, M.D. Dr. Amendt reported that Mr. Baker was physically incapable of returning to his job as a taxicab driver, but was capable of sedentary work activities. Dr. Amendt completed an Occupational Activity Assessment which indicated that Mr. Baker could stand "0-3" hours per day, walk "0-3" hours per day and carry up to ten pounds for an equal length of time. Dr. Amendt assigned no restriction to Mr. Baker's ability to sit.
 {¶ 7} Jennifer J. Stoeckel, Ph.D., performed a vocational assessment for Mr. Baker and did intelligence testing upon him. She reported his full scale IQ as 57, which would place him in the mildly mentally retarded range. The test results were consistent with Mr. Baker's educational background of three grade failures and entering the ninth grade at age 18.
 {¶ 8} Barbara E. Burk, CRC, LPC, was requested to prepare an employability assessment report for the commission. Ms. Burk found Mr. Baker capable of employment as a surveillance system monitor, telephone solicitor, assembler, dispatcher, typist and calculating machine operator. Ms. Burk acknowledged that Mr. Baker's academic achievement was a barrier to employment and that his work history presented additional obstacles.
 {¶ 9} Seeing a conflict between Dr. Stoeckel's conclusion that Mr. Baker was entitled to PTD compensation and Ms. Burk's conclusion, counsel for Mr. Baker sought to depose Ms. Burk. A staff hearing officer refused to order the deposition, finding no substantial disparity between the reports of Dr. Stoeckel and Ms. Burk.
 {¶ 10} A deposition was authorized for Dr. Amendt, who testified that Mr. Baker should not sit for extended periods of time. Seeing this testimony to be in tension with Dr. Amendt's report in the Occupational Activity Assessment that no restrictions were placed on Mr. Baker's sitting during job responsibilities, counsel for Mr. Baker asserts that Dr. Amendt's opinions are equivocal to the point that his opinions cannot constitute the basis for a denial of PTD compensation.
 {¶ 11} We are not willing to bar Dr. Amendt's opinions from consideration by the commission, based upon the differences between the box checked on the Occupational Activity Assessment and his deposition testimony. Dr. Amendt reported in his deposition that Mr. Baker could sit for one to two hours at a time before changing position. This requirement that Mr. Baker be able to change position every hour or two does not undermine the assertion that no restrictions on sitting were imposed.
 {¶ 12} The objections with respect to Dr. Amendt's report are denied.
 {¶ 13} Ms. Burk acknowledged the kind of intellectual limitations demonstrated by Dr. Stoeckel's testing, but balanced this against Mr. Baker's history of performing semi-skilled work activity such as the activity of a cab driver and a helper in installing furnaces. Ms. Burk did not have Dr. Stoeckel's testing and Dr. Amendt's deposition before her when she wrote her report. However, the staff hearing officer was aware of this and could use the lack of this information in the file in evaluating the file review done by Ms. Burk. The additional information did not make Ms. Burk's report so equivocal or defective as to prevent the staff hearing officer from considering and/or relying on the report in reaching a conclusion.
 {¶ 14} The remaining objections to the magistrate's decision are overruled.
 {¶ 15} The objections to the magistrate's decision having been overruled, the findings of fact and conclusions of law contained in the magistrate's decision are adopted. As a result, we deny the request for a writ of mandamus.
Objections overruled; writ denied.
BRYANT and BOWMAN, JJ., concur.
 DECISION IN MANDAMUS {¶ 16} In this original action, relator, Donald E. Baker, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its orders denying his application for permanent total disability ("PTD") compensation and his motion to depose the commission's vocational expert, to allow the deposition and thereafter adjudicate the PTD application after eliminating the report of Dr. Amendt from evidentiary consideration.
Findings of Fact:
 {¶ 17} 1. On December 28, 1995, relator sustained an industrial injury while employed as a taxicab driver for respondent Yellow Cab Company. On that date, relator was involved in a motor vehicle accident. The industrial claim is allowed for: "sprain thoracic region; sprain lumbosacral; aggravation of pre-existing degenerative disc disease of the lumbar spine," and is assigned claim number 95-609389.
 {¶ 18} 2. On August 14, 2000, relator filed an application for PTD compensation supported by a report dated June 23, 2000, from chiropractor Peter J. Fagerland, D.C., who opined that relator "is permanently and totally disabled and is not capable of finding nor sustaining any form of remunerative employment whatsoever."
 {¶ 19} 3. At the commission's request, relator was examined, on November 6, 2000, by orthopedic surgeon Wayne C. Amendt, M.D. In his narrative report, Dr. Amendt wrote: "The claimant is incapable of resuming his former position of employment but is capable of engaging in sedentary work activities."
 {¶ 20} 4. Dr. Amendt also completed an Occupational Activity Assessment ("OAA"). The commission's OAA form asks the examining doctor to indicate by checkmark the claimant's capability in several occupational activities. The OAA form instructs that "[t]he time indicated may be made up of interrupted periods of occupational activity throughout the day." Dr. Amendt indicated that the ability to sit is "unrestricted." The ability to stand is "0-3 HRS." The ability to walk is "0-3 HRS." The ability to lift or carry up to ten pounds is "0-3 HRS."
 {¶ 21} 5. On November 29, 2000, at relator's request, Jennifer J. Stoeckel, Ph.D., performed a vocational assessment. Besides her "mental status examination," Dr. Stoeckel also administered the Wechsler Adult Intelligence Scale-III ("WAIS-III"), and the Wide Range Achievement Test-III ("WRAT-III"). For the WAIS-III, Dr. Stoeckel reported the following results: "Verbal IQ — 62," "Performance IQ — 58," and "Full Scale IQ — 57."
 {¶ 22} For the WRAT-III, Dr. Stoeckel reported the following results:
"STANDARD SCORE PERCENTILE GRADE SCORE
"Reading 60 .8 3
"Spelling 47 .04 1
"Arithmetic 45 .02 2"
 {¶ 23} In her report, dated January 3, 2001, Dr. Stoeckel opined:
 {¶ 24} "Based on the results of my examination and the information provided/reviewed, without reservation, Mr. Baker would be considered permanently and totally disabled. Mr. Baker suffered a work related injury 12-28-95 * * *. He has not worked substantially since approximately 1997 or 1998. He has had recurrent problems with his back and with ambulation. He was evaluated by Dr. Amendt at the request of the Industrial Commission. Dr. Amendt indicated that he could not resume his prior employment but would be capable of sedentary work activities with restrictions. Unfortunately, in light of this gentleman's educational background and intellectual testing, I do not believe that Mr. Baker could successfully compete in sedentary jobs. Mr. Baker has a reported limited 9th grade education. There is a history of at least three grade failures. Mr. Baker was eighteen when he entered the 9th grade. He eventually quit school because he wasn't doing well. He has had no additional training. He has worked mostly as a taxi driver and laborer. His prior employment would not provide him any transferable work skills. Furthermore, vocational testing identifies mild mental retardation (Full Scale IQ = 57), significant academic limitations (reading 3rd grade; spelling 1st grade and arithmetic 2nd grade) and below average perceptual speed and accuracy and manual speed and dexterity skills. Based upon these test scores, I do not believe Mr. Baker could compete in entry level clerical type positions nor would he benefit from remediation and/or rehabilitation even though he is a younger person.
 {¶ 25} "While he has worked predominantly as a taxicab drive and this particular job would require 7th to 8th grade reasoning ability and is evaluated as requiring average skills of general learning, verbal, numerical and spatial abilities per the Dictionary of Occupational Titles, Mr. Baker's actual capabilities per formal testing simply do not approach those capacities. * * *"
 {¶ 26} 6. The commission requested an Employability Assessment Report from Barbara E. Burk, a vocational expert. The Burk report, dated December 12, 2000, responds to the following query:
 {¶ 27} "Based on your separate consideration of reviewed medical and psychological opinions regarding functional limitations which arise from the allowed condition(s), identify occupations which the claimant may reasonably be expected to perform. (A) immediately and/or (B) following appropriate academic remediation, or brief skill training."
 {¶ 28} Indicating acceptance of Dr. Amendt's reports and responding to the above query, Burk wrote:
 {¶ 29} "1A) Surveillance System Monitor; Telephone Solicitor; Assembler.
 {¶ 30} "B) Dispatcher; Typist; Calculating Machine Operator."
 {¶ 31} The Burk report further states:
 {¶ 32} "III. EFFECTS OF OTHER EMPLOYABILITY FACTORS:
 {¶ 33} "* * * Question: How, if at all, do the claimant's age, education, work history or other factors (physical, psychological and sociological) effect his/her ability to meet basic demands of entry level occupations?
 {¶ 34} "Answer: Age: At age 44, Mr. Baker is classified as a person of younger age. Individuals in this age category, typically, can learn and perform new, unfamiliar tasks at a competitive pace. Mr. Baker's age is considered a vocational asset.
 {¶ 35} "Education: Based upon the Industrial Commission of Ohio guidelines for permanent and total disability, Mr. Baker is classified as a person who has a limited education. Individuals in this category typically perform unskilled and marginally semi-skilled work. They have difficulty performing many tasks found in semi-skilled and skilled work activities. This academic achievement level is viewed as a barrier to employment.
 {¶ 36} "Work History: This report focuses upon the work that was performed during the past twenty years since it is that time frame which the Industrial Commission of Ohio recognizes as relevant when assessing one's employment potential.
 {¶ 37} "Mr. Baker has worked in unrelated occupations. His most recent work activity, performed between April and November 1998, required him to pick springs off a line and carry them to a table. This is work as a General Laborer and classified as unskilled work activity. He worked as a Taxi Cab Driver between March and December 1995. This is semi-skilled work activity, learned in over one month and up to three months. Since he performed this job for a nine month period of time, it can be assumed that he developed the necessary skills. These skills include an ability to drive and operate a motor vehicle and knowledge of traffic safety rules and regulations. This is medium in physical demands. The skills that he has developed transfer to other occupations which are also medium or greater in physical demands. He reports performing work as a Helper Installing and Repairing Furnaces. This is the job that he held for the longest period of time (1982 — 1991). This occupation is unskilled work activity and heavy in physical demands. This employment profile is not one that will help him to overcome other barriers to return to work. It is unknown why there are gaps between jobs in 1991 and March 1995 as well as between December 1995 and April 1998. This factor also limits employability since prospective employers will question reasons for such long gaps in work activity."
 {¶ 38} The Burk report also provides the following adjusted worker trait profile:
 {¶ 39} "General Educational Development: (GED) "Grade Level USDOL Level
 {¶ 40} "(R) Reasoning 7-8 3
 {¶ 41} "(M) Math 4-6 2
 {¶ 42} "(L) Language 4-6 2"
 {¶ 43} 7. On January 10, 2001, relator moved for leave to depose Ms. Burk.
 {¶ 44} 8. On March 8, 2001, relator's counsel deposed Dr. Amendt and obtained the following testimony:
 {¶ 45} "Q. [Relator's counsel:] If you want to look at it in [Dr. Fagerland's] report, he noted that the patient states that his low back is markedly stiff in the morning and that he has difficulty standing or sitting for extended periods due to low back pain. Would those complaints be consistent with the allowed conditions in this case?
 {¶ 46} "A. Yes.
 {¶ 47} "* * *
 {¶ 48} "Q. And you had indicated the difficulty standing or sitting for extended periods due to low back pain was consistent with degenerative disc disease; is that right?
 {¶ 49} "A. Yes.
 {¶ 50} "Q. Do you have any quantifying for extended periods? About two hours, something like that?
 {¶ 51} "A. An hour or two, yeah."
 {¶ 52} 9. Following an April 23, 2001 hearing, a staff hearing officer ("SHO") issued an order denying relator's request to depose Ms. Burk. The SHO's order states:
 {¶ 53} "The Staff Hearing Officer finds there is a difference of opinion between 2 reports which can be resolved through the adjudication process. The Staff Hearing Officer finds the report of Ms. Burk to be consistent.
 {¶ 54} "Following review of the claim file and all relevant evidence, it is the finding of the Staff Hearing Officer that the claimant's motion is unreasonable because there is no substantial disparity between reports of Dr. Stoeckel and Ms. Burk. Therefore, it is the order of the Staff Hearing Officer that the claimant's motion is denied. The processing of all pending issues is to resume.
 {¶ 55} "This order is based on reports of Ms. Burk and Dr. Stoeckel."
 {¶ 56} 10. Following a May 16, 2001 hearing, an SHO issued an order denying relator's application for PTD compensation. The SHO's order states:
 {¶ 57} "All of the relevant medical and vocational reports on file were reviewed and considered in arriving at this decision. This order is based upon the reports of Dr. Amendt and Ms. Burke [sic].
 {¶ 58} "* * *
 {¶ 59} "The Staff Hearing Officer finds that the Claimant's condition has reached Maximum Medical Improvement and that the industrial injury prevents the Claimant from returning to work at his former position of employment. The Staff Hearing Officer further finds, based upon the report of Dr. Amendt, that the Claimant retains the functional capacity to perform employment activities which are sedentary in nature.
 {¶ 60} "* * *
 {¶ 61} "The Staff Hearing Officer finds that the Claimant is 45 years of age with a ninth grade education and no GED. The Staff Hearing Officer further finds that the Claimant has a work history which involves employment as a cabdriver, a laborer, and a furnace installer and repairer helper. The Staff Hearing Officer further finds that the Claimant has no special vocation skills. The Staff Hearing Officer further finds that the Claimant is not able to read, write, or perform basic math well.
 {¶ 62} "The Staff Hearing Officer finds that the Claimant's age of 45 years is an asset with regard to his ability to return to and compete in the workforce. The Staff Hearing Officer further finds that the Claimant's limited education and limited academic skills are barriers to the Claimant with regard to his ability to return to work. The Staff Hearing Officer further finds, however, that these factors alone would not prevent the Claimant from working. The Staff Hearing Officer further finds that the Claimant has never had greater education or academic skills and these factors have not prevented Claimant from working in the past. The Staff Hearing Officer further finds that not only have these factors not prevented the Claimant from working, they have not prevented the Claimant from performing semi skilled employment activities. The Staff Hearing Officer notes the academic testing performed by Dr. Stoeckel but does not rely upon this testing. The Staff Hearing Officer finds that the Claimant's work history, which includes semi skilled employment as a cab driver, demonstrates that the Claimant is capable of performing a job which requires seventh to eighth grade reasoning. The Staff Hearing Officer notes the IQ testing of Dr. Stoeckel which indicates that the Claimant has an IQ of 57 which is in the mentally retarded range. The Staff Hearing Officer notes that not only has the Claimant performed work which demonstrates an ability to perform at a higher level, Claimant's presentation at his permanent and total disability hearing was not consistent with an IQ level of 57. The Staff Hearing Officer finds that the Claimant may not be able to benefit from formal rehabilitation and skill training, but there is no basis for determining that the Claimant would not be able to benefit from on the job training. The Staff Hearing Officer further finds, based upon the report of Dr. Amendt that the Claimant retains the functional capacity to perform sedentary employment activities. The Staff Hearing Officer further finds that the Claimant is able to perform the following jobs immediately: surveillance system monitor; telephone solicitor; and sedentary assembler. The Staff Hearing Officer therefore finds that the Claimant is capable of sustained remunerative employment and is not permanently and totally disabled. Claimant's application for Permanent and Total Disability, filed 08/14/2000, is therefore denied."
 {¶ 63} 11. On April 19, 2002, relator, Donald E. Baker, filed this mandamus action.
Conclusions of Law:
 {¶ 64} Two issues are presented: (1) whether the reports of Dr. Amendt constitute some evidence upon which the commission can rely; and (2) whether the commission abused its discretion by denying relator's motion to depose Ms. Burk.
 {¶ 65} The magistrate finds: (1) the reports of Dr. Amendt do constitute some evidence upon which the commission can rely; and (2) the commission did not abuse its discretion by denying relator's motion to depose Ms. Burk. Accordingly, as more fully explained below, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.
 {¶ 66} According to relator, during Dr. Amendt's deposition, he repudiated and contradicted critical findings in his reports, particularly the OAA. Thus, relator asserts that Dr. Amendt's reports must be eliminated from evidentiary consideration because Dr. Amendt was allegedly equivocal.
 {¶ 67} Equivocal medical opinions are not evidence. State ex rel. Eberhardt v. Flxible Corp. (1994), 70 Ohio St.3d 649, 657. Equivocation occurs when a doctor repudiates an earlier opinion, renders contradictory or uncertain opinions, or fails to clarify an ambiguous statement. Id.
 {¶ 68} According to relator:
 {¶ 69} "* * * Dr. Amendt clearly testified that the Relator's complaint of inability to sit for an extended period of time for more than one hour or two hours was consistent with the allowed condition in the claim for degenerative disc disease of the low back. Dr. Amendt, in his medical report, claimed that the claimant was unrestricted in his ability to sit throughout an entire workday. Those statements cannot be reconciled. * * *" (Relator's brief at 10.)
 {¶ 70} The magistrate agrees with the commission's position that relator's argument is flawed for its failure to recognize that the time indicated on the OAA may be made up of "interrupted" periods.
 {¶ 71} "Unrestricted" sitting capacity does not imply an ability to sit without interruption throughout the day. Thus, Dr. Amendt's deposition testimony that relator should not sit for "extended periods," beyond one or two hours, is not inconsistent with his OAA indicating that relator is unrestricted in his ability to sit throughout the day. The OAA contemplates that normal or reasonable breaks will be allowed for the occupational activity.
 {¶ 72} In short, relator's challenge to the commission's reliance upon Dr. Amendt's reports must fail.
 {¶ 73} Turning to the second issue, R.C. 4123.09 provides that the commission "may cause depositions of witnesses * * * to be taken."
 {¶ 74} Supplementing the statute, Ohio Adm. Code 4121-3-09(A)(6) sets forth a procedure for obtaining depositions of a commission or bureau physician. Deposition requests are evaluated under a reasonableness standard. Ohio Adm. Code 4121-3-09(A)(6)(c) and (d); State ex rel. Cox v. Greyhound Food Mgt., Inc., 95 Ohio St.3d 353, 355,2002-Ohio-2335.
 {¶ 75} Ohio Adm. Code 4121-3-09(A)(6)(d) states:
 {¶ 76} "The factors to be considered by the hearing administrator when determining the reasonableness of the request for deposition and interrogatories include whether a substantial disparity exists between various medical reports on the issue that is under contest, whether one medical report was relied upon to the exclusion of others, and whether the request is for harassment or delay. * * *"
 {¶ 77} After extensively discussing the deficiencies of the "substantial disparity" criteria and the exclusive reliance criteria, the Cox court concluded that the code's first two criteria, in most cases, are not very useful in determining the reasonableness of a deposition request. Cox, supra at 356. The court stated that, fortunately, the code implies that other factors may be considered as circumstances dictate. In Cox, the court relied upon two other criteria to judge the reasonableness of the deposition request: (1) does a defect exist that can be cured by deposition?; and (2) is the disability hearing an equally reasonable option for resolution?
 {¶ 78} Here, relator urges this court to apply the Cox criteria to determine the reasonableness of the request to depose Ms. Burk.
 {¶ 79} According to relator, the Burk report is defective because Burk did not review nor accept the factual findings contained in Dr. Stoeckel's report. According to relator, State ex rel. Wallace v. Indus. Comm. (1979), 57 Ohio St.2d 55, required Burk to render a vocational opinion based upon acceptance of Dr. Stoeckel's so-called objective testing results. According to relator, a deposition can cure this alleged defect in Burk's report.
 {¶ 80} To begin, the Burk report is not defective because of a failure to accept the testing results or factual findings contained in Dr. Stoeckel's report. Neither Wallace nor its progeny required the commission's employability assessor to accept the vocational findings of other vocational experts of record.
 {¶ 81} Under the Wallace rule, a nonexamining physician is required to expressly accept all the findings of the examining physicians but not the opinion drawn therefrom. State ex rel. Consolidation Coal Co. v. Indus. Comm. (1997), 78 Ohio St.3d 176, 179; State ex rel. Blue v. Indus. Comm. (1997), 79 Ohio St.3d 466, 470.
 {¶ 82} The courts have never held the Wallace rule to be applicable to the reports of vocational experts. Presumably, this is because there is no requirement that a vocational expert personally examine, interview or test a claimant in order to validate the conclusions of his or her report. Vocational evidence is fundamentally different from medical evidence. Neither the commission nor its hearing officers have medical expertise. State ex rel. Yellow Freight Sys. Inc. v. Indus. Comm. (1998), 81 Ohio St.3d 56, 58. Thus, the commission's findings as to medical causation must be supported by medical evidence. Id.
 {¶ 83} With respect to analysis of the nonmedical or vocational factors, the commission is the expert. State ex rel. Jackson v. Indus. Comm. (1997), 79 Ohio St.3d 266. Thus, the commission need not rely upon vocational experts at all in rendering its nonmedical determination. Id.
 {¶ 84} Ohio Adm. Code 4121-3-09(A)(6), by its terms, applies to requests for depositions of commission or bureau physicians. There is no corresponding code provision regulating requests for depositions of vocational experts. Nevertheless, R.C. 4123.09 presumably gives the commission the authority to grant requests for depositions of nonphysicians even in the absence of a rule setting forth the procedure for obtaining such depositions.
 {¶ 85} Applying the Cox criteria to relator's request to depose Ms. Burk, it is clear that the commission did not abuse its discretion in denying relator's motion to depose. First, the alleged defect sought to be cured — Ms. Burk's failure to review or accept Dr. Stoeckel's findings — is not a defect at all. Second, the disability hearing is the appropriate forum to resolve the issue of the reliability or credibility of Dr. Stoeckel's testing results and her other vocational findings.
 {¶ 86} In short, the commission did not abuse its discretion in denying relator's motion to depose Ms. Burk.
 {¶ 87} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny relator's request for a writ of mandamus.